UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| CERTAIN UNDERWRITERS AT ) <br> LLOYD'S, LONDON, SUBSCRIBING ) <br> TO CERTIFICATE NUMBER CMC1762, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> ABUNDANCE COAL, INC., et al., ) <br>  ) <br> Defendants. ) | Civil No. 12-39-ART <br><br> **MEMORANDUM OPINION <br> & ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

After two homeowners sued a coal company and its president in state court for blasting damage, the coal company's insurer, Lloyd's of London, filed this federal declaratory-judgment action. Lloyd's seeks a judgment declaring that Abundance Coal's insurance policy does not cover any judgment that the homeowners might win in the underlying tort suit. Lloyd's headquarters is situated just minutes away from the world-renowned tailors on Savile Row, who painstakingly measure twice and cut once. Similarly, federal courts must exercise care before interfering with the state courts' role as the primary forum for resolving state-law claims. And here, the declaratory judgment that Lloyd's seeks is not a suitable fit for a declaratory-judgment action.

## BACKGROUND

Robert and Wendy Jackson were living in Larkslane, Kentucky, when operations at a nearby coal mine damaged their home and personal property. State-Court Compl., R. 1-1 ¶ 3. In March 2009, the Jacksons sued the operator of the mine, Abundance Coal, as well as

its president, Ray Slone, in the Knott Circuit Court in Knott County, Kentucky. *Id.*; *see generally Jackson v. Abundance Coal Co.*, No. 09-CI-00118 (Knott Cir. Ct. Mar. 31, 2009). The Jacksons sought compensatory, punitive, and "mental anguish" damages, alleging that Abundance Coal was liable for subsidence damage (erosion that caused settlement of the ground beneath their property) and blasting damage. R. 1-1 ¶ 4–6. Abundance Coal and Slone (collectively, "Abundance Coal") moved for summary judgment on both claims. R. 1-2 at 2. The state court denied summary judgment on the blasting claim, but it granted summary judgment on the subsidence claim because the Jacksons conceded that they were unable to prove causation. *Id.* The Jacksons' blasting claim is set for trial in October 2012. *Id.*

Although Abundance Coal's commercial general liability insurer, Lloyd's of London, was not part of the Jacksons' lawsuit, it anticipated that Abundance Coal might seek coverage if the Jacksons won. So in April 2012, Lloyd's filed this lawsuit under the Declaratory Judgment Act against Abundance Coal, Slone, and the Jacksons. Lloyd's seeks a judgment declaring that (1) there is no insurance coverage for the Jacksons' state-court allegations against Abundance Coal and Slone, and (2) there is no insurance coverage for "any verdict or judgment" that the Jacksons might win against Abundance Coal and Slone. R. 1 at 11-12. They argue that Abundance Coal's commercial general liability policy excludes coverage for blasting damage to homes within one mile of Abundance Coal's operations, for punitive damages, and for damages due to "mental anguish." *See* R. 1 at 8–12.

In their motion to dismiss, Abundance Coal and Slone argued that the Court should not exercise its discretion under the Declaratory Judgment Act to hear this case. R. 8 at 3.

2

The Jacksons have not yet been served or entered an appearance in this case, so they have not responded to this motion. *See* R. 10; R. 11.

## DISCUSSION

I.  **The Declaratory Judgment Act**

Under the Declaratory Judgment Act, federal courts "*may*" enter declaratory judgments in "case[s] of actual controversy." 28 U.S.C. § 2201(a) (emphasis added). Accordingly, federal jurisdiction under the statute is not the same as diversity or federal-question jurisdiction because the statute "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The most important consideration in exercising this discretion is whether retaining jurisdiction interferes with state-court litigation. In fact, the Supreme Court has advised federal courts to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of . . . state court litigation." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

Because the Declaratory Judgment Act is often invoked to resolve state-law insurance disputes, it would be tempting to think that insurance disputes are the primary context for which the federal declaratory remedy was designed. But that sort of tunnel vision would be misguided. Indeed, the declaratory-judgment remedy applies in a myriad of contexts: it is "frequently" used in intellectual property cases and sometimes used to determine federal constitutional issues, the construction of federal and state statutes, labor-relations issues, and other subjects. *See generally* 10B Charles Alan Wright et al., Federal Practice and Procedure: Civil §§ 2760–65 (3d ed. 2005); *see, e.g.*, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) ("The Declaratory Judgment Act exists precisely for

3

situations such as this. The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." (internal quotation marks and citations omitted)). And although there is no "per se rule against exercising jurisdiction in actions involving insurance coverage questions," declaratory-judgment actions are "seldom helpful" when they seek "an advance opinion on indemnity issues," especially ones that turn entirely on state law. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812–13 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)). After all, such actions "should normally be filed, if at all, in the court that has jurisdiction over the litigation [that] gives rise to the indemnity problem." *Id.* at 812 (quoting *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463). Consequently, it should not be surprising that the federal declaratory remedy is appropriate only for a narrow category of state-law insurance disputes. *Id.* at 816 (questioning "the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner" (quoting *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986))). This case is not one of them.

**II.   The Sixth Circuit's Five-Factor Test**

The Sixth Circuit has outlined a five-factor test for deciding whether to exercise jurisdiction over declaratory-judgment actions. The Court must determine whether: (1) the declaratory action would settle the controversy; (2) a declaratory judgment would increase friction between federal and state courts; (3) an alternative, better remedy is available; (4) a declaratory judgment would serve a "useful purpose in clarifying the legal relations in issue";

and (5) the declaratory remedy is being sought merely to "provide an arena for a race for res judicata." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Applying the factors in this case supports dismissal.

### A. *First factor: whether a declaratory judgment would settle the controversy between the parties*

Resolving this declaratory-judgment action will not settle the controversy between the parties. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, 495 F.3d 266, 271–72 (6th Cir. 2007). The focus of this factor is not whether issuing a declaratory judgment would settle the controversy immediately before the Court, but whether doing so would settle the "ultimate controversy" in the underlying state-court litigation. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008); *see Travelers Indem. Co.*, 495 F.3d at 272. But any declaratory judgment in this case could not settle the underlying tort suit itself. Indeed, a declaratory judgment could not even settle whether the coverage questions that Lloyd's presents in this case. After all, Lloyd's seeks two declaratory judgments: (1) that there is no insurance coverage for the Jacksons' allegation of blasting damage and the compensation they seek for mental anguish and punitive damages, and (2) that there is no insurance coverage for any judgment that the Jacksons may win in state court. A declaratory judgment may settle the first controversy but could not settle the second one because determining whether coverage exists for any judgment that the Jacksons win depends on the facts developed at trial. *See infra* Part II.B. Indeed, no matter the outcome of a declaratory judgment, the parties would be forced to engage in fractured, piecemeal litigation and thus weighs against exercising jurisdiction.

5

### B. *Second factor: the possibility of friction between federal and state courts*

A declaratory judgment in this case could increase friction between federal and state courts. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008). To be sure, the lawsuit pending in Knott Circuit Court does not present the same coverage questions that Lloyd's asks the Court to decide here. And the "mere existence" of that ongoing state court proceeding "is not determinative of improper federal encroachment upon state court jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Rather, the Sixth Circuit has identified three "sub-factors" to guide district courts in determining whether the potential for friction is too great. Here, those three sub-factors indicate a risk of friction with the state courts.

The first sub-factor is "whether the underlying factual issues are important to an informed resolution of the case." *Scottsdale Ins. Co.*, 513 F.3d at 560 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 814). The Sixth Circuit's primary concern under this sub-factor is whether the "issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* Lloyd's argues that resolving this declaratory-judgment action does not depend on any underlying factual issues because interpreting the scope of the insurance coverage, blasting exclusion, and punitive damages exclusion involves questions of law. That is undoubtedly correct. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010).

But at least with respect to the applicability of the blasting exclusion, interpreting the meaning of that exclusion is not the only task the Court must undertake in this case. As Lloyd's concedes, the Court would also have to "determine[] that the blasting exclusion is applicable to the facts" of the underlying tort suit—that is, how the Jacksons' home was

6

damaged and whether it was caused by Abundance Coal's blasting operations. R. 7 at 8. Perhaps the damage occurred directly due to blasting via debris, shockwaves, and dust, or perhaps the blasting caused a covered peril to occur for which there might be coverage. Without the benefit of a factual record, the Court cannot decide this question without the risk of preempting the state court's determination of the facts. After all, Lloyd's wants a judgment declaring not just that there is no coverage for the Jacksons' allegations, but also that there is no coverage "should the Jacksons obtain *any verdict or judgment*" in the underlying state-court litigation against Abundance Coal. R. 1 at 11-12 (emphasis added). This sub-factor therefore indicates some risk of friction with the state court. *Accord Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 2009 WL 585806, at *3 (E.D. Ky. Mar. 6, 2009) (Caldwell, J.) (declining to exercise jurisdiction over a similar declaratory-judgment action partially because the Court could not apply a pollution exclusion "based solely on the allegations" in the state-court complaint and would have to rely on a factual record of how the plaintiffs were damaged, which would be developed in the state court).

The remaining sub-factors indicate an even stronger likelihood of friction with the state court. The second sub-factor is whether the state court is in a better position to evaluate the issues than the federal court. *Scottsdale Ins. Co.*, 513 F.3d at 560. This case involves pure questions of state law "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous Cas. Corp.*, 373 F.3d at 815; *see Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 818 (1989) (recognizing that "question[s] of state law [are] within the special expertise of the [state] courts"). While the state-law questions are not particularly novel, novelty is not the only concern. For example, in *Bituminous Casualty Corporation*, the Sixth Circuit held that the Kentucky court was in a better position

7

to resolve questions of Kentucky law without immediately pointing to the novelty of the state-law issues.  373 F.3d at 815.  The court proceeded to say that the state-law issues were novel, but only as an additional reason that the state court was in a better position to resolve the matter.  *Id.*  Because this case involves only questions of state law, this sub-factor indicates the possibility of friction with the state court.

Finally, the third sub-factor—"whether there is a close nexus between underlying factual and legal issues and state law and/or public policy," *Scottsdale Ins. Co.*, 513 F.3d at 560 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 814–15)—also suggests the potential for friction with the state court.  This is a case about an insurance contract, which the state "regulate[s] . . . for the protection of [its] residents."  *Id.* at 561 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 815).  Interpreting the contract will necessarily implicate state insurance-law policies, a recognized source of friction.  *See, e.g., Travelers Indem. Co.*, 495 F.3d at 273.

Weighed together, the three sub-factors indicate that entertaining this declaratory-judgment suit could increase friction with the state courts and encroach on state authority.  There is some risk of conflicting factual findings and the interpretation of the insurance contract at issue is a pure question of state law that is intimately intertwined with the state's regulation of the insurance industry.  *See also U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565–66 (6th Cir. 2006) (unpublished table decision) (concluding that there was "the possibility of increased friction" where the state-law questions "arise in a field [that] is largely reserved to the states and thus implicates public policy considerations that form the foundation of state regulation of insurance" (internal quotation marks omitted)).

### C. *Third factor: the availability of a better alternative remedy in state court*

Lloyd's also has at least two better alternative remedies in state court. *Scottsdale Ins. Co.*, 513 F.3d at 561–62. Kentucky provides its own procedure for a declaration of rights. Ky. Rev. Stat. § 418.040. As the Sixth Circuit has held, this state procedure is a better remedy than a federal declaratory-judgment action "when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous Cas. Corp.*, 373 F.3d at 816–17 (quoting *Am. Home Assur. Co.*, 791 F.2d at 63). Such is the case here. In addition, a second superior alternative remedy exists: if Abundance Coal is found liable in the Jacksons' tort suit, then Abundance Coal can bring an indemnity action after the Jacksons' tort suit concludes. *See id.* at 816 (holding that a "superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action" (citing *Manley, Bennett, McDonald & Co.*, 791 F.2d at 462–63)). Either of these remedies could be presented to the "same court that will decide the underlying tort action." *Id.* That state court will be in a superior position because it will be familiar with the manner in which the Jacksons were allegedly injured and will be able to address any "confusing problems of scheduling, orderly presentation of fact issues and *res judicata*." *Id.* at 812 (quoting *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463). This factor therefore favors dismissal.

### D. *Fourth factor: clarification of the parties' legal relations for a useful purpose*

Deciding this case would not serve a truly "useful purpose" by clarifying legal relationships among the parties. *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004); *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas. Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Resolving the declaratory-judgment action may clarify the legal relations between Lloyd's

and Abundance Coal, Slone, and the Jacksons. But that clarification must also serve a "useful purpose." *See AmSouth Bank*, 386 F.3d at 786. The state court can also clarify these very same issues—and probably do so more ably given its state-law expertise. *See id*. Lloyd's does not offer any reason why it will "suffer injury unless legal relations are clarified" here rather than in state court. *Id.* And the Court can think of none. Ultimately, keeping this case would do little but cause Abundance Coal and the Jacksons "to engage in litigation on two fronts." *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 785 (citing *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). This factor therefore weighs in favor of dismissal. *See Am. Fidelity & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) (affirming a district court's decision not to exercise jurisdiction to avoid "express[ing] legal opinions on academic theoreticals which might never come to pass" where the declaratory-judgment action was brought to determine the respective liabilities of co-insurers before the insured had been found liable).

### E. Fifth factor: the "race for res judicata"

The last factor is whether Lloyd's is seeking the declaratory judgment merely for the purpose of providing "an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326 (quotation omitted). This factor is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before . . . [the] natural plaintiff'"—i.e., the insured—has filed. *Scottsdale Ins. Co.*, 513 F.3d at 558 (quoting *AmSouth Bank*, 386 F.3d at 788). The Sixth Circuit has consistently admonished district courts to be cautious when an insurance company files a declaratory action before the insured files its suit, warning that allowing such actions to go forward "can deter settlement negotiations and encourage races to the courthouse." *See AmSouth Bank*, 386 F.3d at 788 (collecting cases).

Here, Lloyd's has filed its declaratory action three years after the Jacksons sued Abundance Coal in state court, but before any finding that Abundance Coal is liable and well before any coercive suit by Abundance Coal to seek coverage. Lloyd's claims that it deliberately waited to bring this action until after the state court ruled on Abundance Coal's motion for summary judgment. Perhaps this timing and explanation present a legitimate reason for filing this declaratory-judgment action. *See Bituminous Cas. Corp.*, 373 F.3d at 814 (concluding, after giving the insurer "the benefit of the doubt," that "no improper motive fueled" the filing of its declaratory action two years after the underlying state lawsuit was filed against its insured). Or this explanation might indicate a preemptive strike by Lloyd's. Having seen its insured's chances of being held liable increase after summary judgment was denied on the blasting claim, Lloyd's, as "a putative defendant in a coercive suit," may have wanted to secure its choice of forum as the declaratory plaintiff—"a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth Bank*, 386 F.3d at 788; *see also id.* ("[The Act] is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002))). At best, this factor is neutral. *See Travelers Indem. Co.*, 495 F.3d at 272 ("Although no improper motive prompted this action, this factor is neutral.").

## CONCLUSION

Together, these factors favor dismissal. The first four weigh in favor of declining to exercise jurisdiction, and under a best-case scenario for Lloyd's, the last one is neutral. Taking into account the Sixth Circuit's skepticism at the need for federal declaratory-judgment actions involving pure issues of state law, the best use of this Court's "broad

11

discretion" is to dismiss Lloyd's declaratory-judgment action.  *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 526 (6th Cir. 2000).

Accordingly, it is **ORDERED** that the Defendants' motion to dismiss, R. 6, is **GRANTED**.  The Clerk shall **STRIKE** this case from the Court's active docket.

This the 27th day of July, 2012.

Signed By:
*Amul R. Thapar*  AT
United States District Judge